Our third and final argument this morning is number 23-2284, Secretary of the United States Department of Labor against NursingHomecaremanagement Inc, Doing Business as a Prestige Homecare Agency and Alexander Dorfman. Mr. Docherty. Thank you, Your Honor. It may please the Court. My name is Colin Docherty. I'm here on behalf of the appellant defendants. I'd like to reserve three minutes for both, if I may. Granted. Thank you, Your Honor. We're here today because the executive branch of the United States government, through its Department of Labor, is attempting to amend, if not repeal, at least partially, the Portal to Portal Act by requiring private employers to pay for travel time between worksite to worksite, which is specifically precluded by the Portal to Portal Act. This, of course, is only true when that same branch of the government is not... The Portal to Portal Act is what? Preliminary and post-preliminary activities? It is, Your Honor. It's also... I'm sorry. The argument here is it's something in the middle, right? It's also, and this is the Bridges case, Your Honor, it's also specifically held to and from the actual place of performance of the principal activities. So it includes that commute time. It's certainly our position, as the federal circuit found in Bridges when the Department of Justice was arguing a very factually similar case, that that time when there is that break, particularly in a voluntary scenario like we have here, that that travel time is part of the break. It's part of, protected by the Portal to Portal Act, it is driving to and from where you do the principal activities and not, in fact, the principal activity of a home health aide, which would be bathing, cleaning, medicating their attendee. Bridges, I think it's important that we talk here today, too, about what at least we are talking about as opposed to what the government is talking about, and that is that travel, that bookends these breaks that are in excess of 20 minutes, and that the HHA is fully relieved of duty during that time. We have presented evidence that from HHA, HHAs, or aides, who, in fact, work other jobs during that time. If a person comes in, let's change the facts slightly, if a person comes into the office in the morning and says you are assigned today to this particular facility, and you get in your car from the main office and go to that facility, are you saying that's not covered? No, Your Honor. I'm saying that would be covered, but that's not the facts that we are addressing. I understand. I'm changing the facts. Understood. So that would be covered? That would be covered. But when they go from that facility to the next facility in the afternoon, you're saying, and it's, let's say, a 15-minute drive, you're saying that is not covered? That is not covered in a certain factual scenario, which is what we moved on underneath, and which is, I think, analogous to the Bridges case. We believe that is not compensable when that aide chooses to structure their day, volunteers to take that break and builds in that break, that doesn't require an immediate travel to that next job or that next facility for that, say, 15 minutes. Just like the prison guards, and I think it's important to see what Bridges specifically held that it was ruling on. It ruled on a scenario where prison guards would work a shift until 7 a.m. Then they were asked to volunteer to work a shift at a hospital, a local hospital or local hospitals approximately 20 minutes from the prison that would start no earlier than 8 in the morning and could start as late as 3 in the afternoon. And the Bridges court specifically held they were only looking at the time that it started at 8 and were specifically in footnote 1 not addressing if that time was assigned, that it had to be voluntary. But the Bridges case, as I recall, was based on Office of Personnel Management regulations that defines principal activities differently than the way principal activities are defined here. Is that correct? The Bridges case actually held that there would be no distinction that they were harmonious, while the OPM regulations actually controlled... Bridges applied to what? Federal regulations. Federal regulations for federal employees, right? Correct. All right, so let's look at the regulation in this case, 29 CFR 785.38, which I think is known as the travel that's all in a day's work. Correct. Is that right? So why is not that regulation dispositive as to whether the travel time here was compensable? Because you have to look at that regulation and lay it down next to the regulations that allow for uncompensated breaks that are longer than 20 minutes, including things like lunch breaks. And you have to read it as a comprehensive scheme. And quite frankly, if there's any lack of clarity on which should cover, it should go against... Is that the key line of demarcation? You've mentioned that number a couple of times. Yes. Per the regulations by the Department of Labor, yes, 20 minutes is the key. So if it's less than a 20-minute break, it's compensable, and if it's more, it's not? Less than a 20-minute break is presumed compensable unless, of course, there is an affirmative defense, and it would be defendants to prove that that time would somehow be de minimis. First of all, it has to have occurred, not been paid, pushed the person beyond 40 hours or under a minimum wage if you folded that time in, and then it has to not be excluded by some sort of defense like good faith, lack of knowledge, de minimis in time that would not hold the defendant liable. Understanding that those are affirmative defenses, and that would address why the break times, the department... Right, but before we get to defenses, we have to have liability. Correct. So, I mean, tell me if I'm oversimplifying this, but why shouldn't we say that driving from... residence for four hours, and then you drive 10 minutes to Client B's residence, that would seem to be obviously compensable, but if you go to Client A's residence, and then you go to have a two-hour lunch with your friend, that two hours isn't going to be compensable on your way to go to Client B's residence two hours later. But why isn't the transportation from Client A to Client B on a 10- or 15-minute normal amount of time, why isn't that compensable? Are you saying it is compensable, but we have an affirmative defense or affirmative defense? Well, I'm saying it should not be compensable as a matter of law, but if the court were still... Why? Because once you are on that two-hour break, particularly... No, no, not the two-hour break, the 10 minutes, 10 minutes. But I don't think they can be, as Your Honor... I'm assuming, I'm with you on the two-hour, go have a two-hour lunch with your friend. You're not on the clock. You go see a movie, you go watch your kid's violin concert, you go to a soccer game, you're not on the clock. But when you go from Residence A to Residence B in the course of your all-in-a-day's work, is that not compensable? Well, it would not be, Your Honor, because this is where our position as a department is being intellectually dishonest. If that time... I'm not asking about what they're saying. I'm asking, is that compensable when somebody goes from Client A's house to Client B's house, and it's a 10-minute drive in the middle of the workday? Is that compensable or not? Not if it's during a lunch. Not if it's during that two-hour lunch break, as Your Honor... It's not a two-hour lunch break. I don't know where you're coming at. You're fighting my hypothetical. Then I apologize. I'm not understanding. It's not a two-hour lunch. I'm giving you two different cases. Okay. I'm sorry. I must have been unclear. So in Case 1, in Hypothetical 1, the worker goes to the client's house for four hours, then drives 10 minutes to the next client's house at 11 in the morning, from 11 a.m. to 11.10. That's one hypothetical. The other hypothetical is they go to client's house until 11, and then at 11 they go to their kid's school for a violin concert for an hour, and then from 12 to 1 they have lunch with their kid, and then they go to Client B's house. What I'm suggesting is in Hypothetical 2, that two-hour gap where you go to the violin concert and lunch, it's not compensable. But in the first hypothetical, in the 10-minute drive from Client A to Client B, that's compensable. Or is it your position that it's not? My position would be it would be potentially compensable unless there's a proper affirmative defense. Okay. Then what is your affirmative defense here that for all of the various iterations where what your employee did was more like Hypothetical 1 than Hypothetical 2, what's your affirmative defense for why those people shouldn't be compensated? My affirmative defense is it could be de minimis. There's certainly on the record that it didn't happen. The liability and damages here are inextricably linked. It didn't happen. So none of your workers went from Client A to Client B on a 5, 10, 15-minute drive or walk? Not none. No, Your Honor. Well, you said it didn't happen. Right. So the truth is it happened, but only not as much as the government says it happened? Correct. All right. Well, then that means you're liable, but the damages are too high. Tell us where the damages are too high. Tell us where it did happen and where you are liable and where you're not liable. So the government is seeking to enforce liability on your B example, Your Honor, by saying you have to take out 15 minutes out of that 2 hours and pay for that 2. And our position is that. And the government concedes that's like 70% of their damages as they propose it, that that's 70% of their damages liability or their damages analysis, and that that creates liability. And that's the Bridges example. All right. So on my hypothetical number 2, you're saying that the government, instead of saying the person's off the clock when they go to the violin concert and have lunch with the child, the government is saying you owe us for 15 minutes within that 2 hours. That's exactly correct. All right. Thank you. That's very helpful. So why, then, what if the last 15 minutes, what if you have lunch with the child for 45 minutes instead of an hour, and the last 15 minutes of that hour you're driving to Client B's house? That's not compensable? It should not be, Your Honor, because your personal decision-making is affecting how long that drive is. All right. But what if every other day you go from Client A to Client B's house and you don't go to the violin concert or lunch? It takes exactly the same amount of time, 15 minutes to go from Client A to Client B's house. But the break is an important factor that takes you out of the clock. All right. So your legal argument is that once you go on a detour, a frolic, a personal errand, whatever,  that you would normally recoup? Even though you have to get some period of time to get to the next place. Correct, Your Honor, but you have to take some period of time to get to the office in the first place, and the Portal to Portal Act clearly precludes that. Well, I don't think the government's arguing that your clients need to get paid to drive to work or drive home at the end of the day. They're seeking money for the middle of the day, aren't they? Correct. But I would argue that they're being intellectually dishonest if they're not, because their argument is saying that the drive itself, because they're home health aides, is integral and indispensable to the delivery of these services at the home. And you'd disagree with that? I would disagree with that. Then why under the first scenario would you pay for the 15-minute commute from A to B?  No, you just said that the drive time is not integral to the work, right? When I interrupted you, hadn't you just said something like that? Correct, but in a work environment, Your Honor, if I take a smoke break, my employer says I'm allowed 15 minutes at 10 o'clock and 2 o'clock to go downstairs and have a cigarette, get a cup of coffee, talk to my friends, I would argue that I'm not doing anything that's integral and indispensable to my job as an attorney. But that, the regulations are clear, is still compensable time, notwithstanding that I've been fully relieved of duty for 15 minutes because it's less than 20 minutes under the regulations. I guess I don't understand why, if you go straight from A to B, that 15 minutes is compensable because it's integral to your work. But if you do that same 15-minute commute on the same road to get to the same client, after you've done something else, it's no longer integral to your work. You still have to get to the client's house. I see I have a red clock. May I continue? Your Honor, I apologize for my misspoke. I don't agree that that would be integral to your work, but I would agree that that time, per the regulation that Judge Hardiman is addressing, is covered as compensable time per the regulation. I do not concede that that would be actually integral to the job, just like a morning commute to the work or an afternoon commute home. But the court has upheld that concept, like a smoke break, that direct travel is compensable. How does Prestige handle client visits without any off-duty time? They would pay for the entire time. And that's why we think that this case is, one, it's overblown. This time, this break period, that's the travel time, that is the bulk of the damages here, only occurred at about 20 percent of aides, and they were allowed to choose it and design that themselves. They're allowed to pick how far away I want to be from my house, the first shift, the second shift, if not. So because of that choice, I think it further makes it difficult for Judge Hardiman, your question about, well, what about that 15 minutes after lunch with my child? Well, I chose to go to King of Prussia and see my child and have lunch with them here and then drive back downtown to my second shift. That should not be compensable. No, that shouldn't be. If the normal drive from client A to client B is 15 minutes, you can't bill the boss for a 45-minute drive because you decided to go out to King of Prussia. That seems obvious to me. We agree. But your argument, as I understood it, was that there's a break in the causal chain, that even if my drive is identical to what it always was, once I go on that personal errand, I'm not able to recover. Correct. And what regulation or case law supports that break in the causal chain idea? So the Bridges case supports that break in the causal chain idea. But wasn't Bridges focused on the federal regulations interpreted in that case? It was, although they said they're harmonious with the DOL regulations. And the federal regulations do not define the activity somehow differently. And the federal regulations also require compliance with the Portal to Portal Act, which is exactly what the Bridges court held controls, is the Portal to Portal Act in this area. There's a number of regulations that allow for – Does it make a difference that that was essentially a double shift in Bridges? I mean, these are people that are doing doubles rather than just working one day, one eight-hour shift. No. I'm sorry. No, I would say the double shift is how Bridges and the case at Bar is different than the city of Albuquerque case. Because both the Bridges case and our case here, the second shift is voluntary. It's by design and allowed by – and Bridges was simply – But all of your employee shifts are voluntary. I mean, that's the thing that's peculiar about this case, in my mind, is that the employer seems to give tremendous latitude to give the worker's agency to pick and choose when they work, where they work. I mean, it seems like – Another way of saying it is it suffers or permits them to arrange their workday that way. Right. But it also suffers or permits them to take these long breaks to see their children or even work or allow them to work at another job, which there is evidence to the record. And that's how – Well, but when they – I'm not sure. It sounds like you're punishing them for working at two sites in one eight-hour workday. Because if one client needs you for four hours and another client needs you for four hours, you have to get from client A to client B. And that's – you're still in the middle of the workday. You're not doing one of these personal detours. I'm sorry. Sorry for interrupting. Your Honor, that's how I would tell you is the difference between our case and Bridges and the city of Albuquerque case. The city of Albuquerque case, the defined job was two split shifts where you started in point A, you're left at point B, and the court said then the shuttle is integral and dispensable. In Bridges, like here, it's – you're not punishing the employee because you're not requiring them to work two days. You would actually be punishing the employer because the solution to this is then the employer can – No, but if the employee chooses to work an eight-hour day and it's two locations, it doesn't seem unreasonable for the employer to cover the transportation from point A to point B under the – it seems like the regulation requires that because it's travel that is all in the day's work. And I guess maybe your argument is that in this business there's no such thing as a day's work because – A continuous work day. A continuous work day because it's just a bunch of two-hour, four-hour, five-hour shifts. Well, it could be eight hours. It could be five hours. And, I mean, I can tell you the solution in the industry would be if the court holds that that time is compensable, they will no longer let aides split and give them the freedom to do it. Well, this is – you've just identified a real potential problem in our labor laws. I mean, there are a lot of businesses that will give people flex time to work less than a 40-hour week as long as they make up the time the next week, but the labor laws are written in such a way that you get punished for doing it. As an employer, you get punished for doing that, right? Agreed. You know, I mean, a rational employer would say, look, I'm doing you a favor by letting you work 30 hours this week. Next week you're going to give me 50. It's a fair deal. The employee asked for it because the 30-hour week you're going to your kid's soccer tournament. It's great for the employee, right? Federal law apparently says no. The 50-hour week that's the make-up week that the employer is doing is an accommodation to the employee. We're going to whack you by forcing the pay overtime for the 50-hour week. That's the way the law is written, isn't it? For private employers, yes. Unfortunately, the government doesn't abide by that themselves, similar to the arguments in Bridges. Well, none of our law clerks work less than a 40-hour week, I can assure you. I can't speak for the judges. I think we're pretty much over the 40, too. But isn't this the problem? I mean, I think, you know, if this is a problem in our labor laws, there's nothing this court or you can do about it, or your client can do about it, right? Well, but I would argue, and if I may continue, Your Honor, I would argue, though, but you're also now hitting on the head of the sort of second part of our problem in our case, is while I agree that if that is the state of the law, that there's nothing the employer can do except start to manage differently and employ people less, and they'll make less money, and potentially even drop below the ACA threshold for insurance, and there's a cascading effect on all that. But it also then brings up ideas like, you know, the damages here were not only, we would argue, inappropriately calculated on this by averages by an investigator that has no statistical experience, but that they were doubled for willfulness because it was presumed by simply not doing this, by giving employees this flexibility, that that was somehow willful and intentional. And then, you know, there's 3.6. The willfulness seemed to be imposed in part because of the prior violation. Is that right? Well, that's at least referenced by the court's opinion, which is, I would argue, is not the clearest or most direct, and that's the opinion for summary judgment. There is no opinion issued for the grant of the Dalbert motion, and there is no opinion issued denying our sanctions, and the sanctions in particular addresses the prior issue where the department delivered to our client a home health care guide about what is compensable and what is not compensable. That guide was in your possession since 2017, right? Correct, but we asked for it, we asked for all communications between the department and our client. My point is, in some way, were you injured by that guide being in your presence for the last seven years? We were injured when the department denied or affirmed that they stated we could not, they gave us everything in all communications and then brought it up in their oral argument conversation. But how were you injured by knowing something beforehand? Did they completely surprise you is what you're saying, and that guide was really not in evidence and therefore shouldn't have been in evidence, or what? Well, we certainly wanted the guide in evidence. Why didn't you put it in? Because the government had taken the position throughout that that prior investigation was not relevant, because they actually called it a conciliation and not an investigation, until we were at oral argument for summary judgment when they pointed to it as putting our client on notice and then addressing the guide and the text of the guide. We would argue that the text of the guide, because it lacks discussion of this time and in fact specifically states that these breaks, as your Honor has pointed out, would not be compensable, says time does not count as hours worked if an employee has a break long enough to use the time for his or her own purpose. For example, if your home care worker is free to go to the movie, run a personal errand, or attend an event at her child's school, the worker does not have to be paid for that time. So we would argue that that would certainly make, at least defeat summary judgment. That sounds like arguments we can ask the government counsel. Let's address for a minute Crandall's report. How would hearing have helped you advance your position as to whether that report was admissible? Because Mr. Crandall analyzed all the data, not just 20%, the personally chosen 20%, and he opined- That's an argument for what's good about his report, but I'm asking how would a hearing have made a difference? What would have happened at that hearing that would have illuminated whether his report was admissible or not? Well, we don't know why the court dismissed Mr. Crandall because the court didn't issue an opinion. So we certainly would believe that a hearing would have illuminated more of what Mr. Crandall had reviewed and could explain and would have given the government the chance to cross-examine him and he could defend his opinions and show and explain further. We think the court misunderstood that Mr. Crandall issued his report long before summary judgment briefing and went through a number of scenarios and possibilities. Once we were either post-summary judgment or the government could have focused on issues and we could have rebutted those questions in a hearing, that a fulsome record would have existed on whether he should have been admissible. But you're saying this was, remember this isn't a discretionary matter for the district judge to decide, correct? Correct, but this court has held, Your Honor, that particularly in a summary judgment stage, lack of issuing an opinion or lack of having a hearing in a Dahlberg case, at least while this court has not held that is a per se abuse of discretion, has certainly hinted at it particularly in other contexts like criminal cases under 403. So we certainly take the position that if you're going to strike an expert in particular, a hearing should be de facto. Let me give you a minute to address your rebuttal to the DOL's calculations of back wages. What are your best arguments against their? Sure. Our best argument is it was no difference than, first of all, there was an original investigator who did it. That investigator was deposed and challenged. On the eve of the close of discovery, a new investigator came in. While the new investigator was a United States Naval Academy graduate and served as a submariner, and I appreciate his service, that in no way makes him a statistical expert. And he acknowledges that. He chose 20%. The government argued for both sides of the coin that all the records are there, but he chose only to use 20% because he felt that was reasonable. Then from that 20%, he comes up with 10.88 minutes as an average travel time. Then he decides to round that up to 11 and add another four minutes based on walking, starting your car, mapping, doing things. Again, but he never leaves his desk, by the way, to do this. He just makes these decisions. So if the government is going to tell us that our expert has usurped the role of the jury and is making unfounded legal decisions, this person, who was not even designated an expert, and in fact they denied calling him an expert throughout, is doing exactly what they are complaining, they say, Mr. Crandall was doing, although Mr. Crandall looked at all of the data. I mean, Mount Clemens, Your Honor, cannot stand for the proposition that, particularly at summary judgment, a non-expert, non-statistician can decide on what's relevant, decide on the math, make all these assumptions, and our client not only gets a $3.6 million verdict based on that, it gets doubled to 7.2. Can the government ever use averages or do they have to have a data point for every minute? I can't speak to that hypothetical because I don't know the full volume of cases that they use, but in this case, Mount Clemens was a scenario where the defendant in that case, or the employer in that case, didn't have records and I believe even destroyed records and couldn't be held to benefit from that. That's the complete opposite here. The government has acknowledged in this case the only record our client didn't have was the travel time that we are disputing is compensable. So they could have done the math. They could have engaged someone to do the math. Well, you're getting punished because you didn't have the travel records because you didn't think you had to pay for the travel. Correct. But the case law says that when you don't have the records, then a reasonable estimate is enough. But what's reasonable, and that reasonableness was never tested by the finder of fact. All right, we'll hear you on rebuttal. Thank you, Mr. Daugherty. Let's hear from Ms. Troutman. Thank you, Your Honor. Good morning, and it may please the Court. Shelley Troutman for the Acting Secretary of Labor. I'd like to start out by addressing the fact that this is the first time that Prestige has acknowledged that what we're calling direct worksite-to-worksite travel is compensable. They've maintained throughout this litigation that any worksite-to-worksite travel, whether that occurs directly or indirectly where there's an intervening break, that none of that is compensable. So I think that's important to acknowledge that they are now conceding and taking a different view in light of your questions. Well, that's why they didn't keep the travel records, right? Yes, they didn't track any travel time, whether it be direct from worksite A to worksite B or if there is some sort of intervening break. I'm not sure Mr. Daugherty's concession was as strong as you just articulated because at another point in our questioning, he said that if you choose, as a home health aide, to go work four hours for one client and then you're going to go work three hours for another client, that's on you and it's like two different work days. That is their opinion, but that is completely contradictory to the controlling regulations in this case and case law. Point to us to the language of the regulation that says he's wrong about that. Well, the work time-to-work time regulation, the travel all in a day's work regulation that you cited before, explains that when an employee engages in travel during a work day, including worksite-to-worksite travel, he or she is doing so as part of their principal activity and it is therefore compensable. I think it's important to acknowledge that the Portal-to-Portal Act has no bearing on this issue. The Portal-to-Portal Act only controls activities that occur prior to the employee's first principal activity and after their last principal activity. It defines the work day. The Supreme Court in Alvarez explained that the Portal-to-Portal Act has no control over how a work day and the compensability of time during the work day is calculated. So is it your argument that in my hypothetical number two, where you work four hours at one client and then you go to the violin concert for an hour and then you have lunch with your child for an hour, that two-hour detour is still part of the work day? It is part of the work day, but that two-hour time, if it is off-duty time, meaning it's long enough to be able to use for the employee's own purpose, which it sounds like that's what you're explaining, the off-duty time is not compensable. The department has never said you must pay for that time where you were legitimately off-duty. And then you become back on duty when you leave lunch with your child and go to Client B's place? The clock starts running again and you get paid for the 15-minute drive to Client B's place? Well, no, the employee doesn't control where the worksite-to-worksite travel starts and ends. I don't get that. I mean, I thought here the employer gave the workers tremendous autonomy over which jobs to pick and which clients to serve. Certainly, but I think maybe this will help explain what I mean. The employer must still pay for the time necessary to travel between worksite A and worksite B, even if there is an intervening break between those worksites that constitutes off-duty time. All right, what regulation or case law tells us that? The worksite-to-worksite regulation explains that worksite-to-worksite travel is compensable. It doesn't limit it to, quote, direct travel, or it doesn't explain that if there is an off-duty break that that somehow breaks up the workday. But if I'm at the violin concert and I'm having lunch with my child, I'm not at the worksite. Right, and that time is- But it's a different place. But then when I leave the school to go to client B's house, your argument is that I'm going from worksite-to-worksite? No, no. The worksite is the first client's home, and the second worksite is the second client's home. So the time necessary to travel between those locations is what's compensable. The employee can't decide to go 50 miles in one direction, extending the travel it would take from that location to the next worksite. All right, what if it normally takes me 15 minutes to go from client A to client B? Yes. Okay, 15 minutes. You say that 15 minutes I get paid because I'm on the clock, correct? Yes, because that time is necessary to travel. All right. Now I go to my kid's school for the concert and the lunch, and my child's school is one minute away from client B's house. Do I get paid for one minute, or do I get paid for 15 minutes? No, the 15 minutes is what's necessary to travel between worksite A and worksite B, and it is compensable. And your argument is that 785.38 says that? Yes, and it's consistent with the continuous workday doctrine, that all time between an employee's first principal activity and last principal activity will be compensable unless it is off-duty time or a bona fide meal break period. All right. Now what if I go at 7 in the morning to the client's house, 7 to 11 a.m., and then I go to lunch with my friends, and then I go to a baseball game that lasts four hours, and then I go home and I take a shower and I have dinner, and then I go to client B's house at 8 at night, and I'm going to work from 8 to 12. So I, because I want to regulate my own life, I want to have some autonomy, I made a decision on my hypothetical to work from 7 to 11 and 8 to midnight, and I'm doing all these fun things in between. Do I get paid for the travel time between client A's house and client B's house? Yes, if it is on the same workday. What's the definition of the same workday? A calendar day? It can depend. Usually it's a 24-hour period, but the employee and the employer can decide what the confines of the workday is. But the Portal to Portal Act and the Supreme Court and the Department of Regulations explain that an employee's workday is between the first principal activity and the last. How do you measure the time in this instance of the hypothetical that was given to you? In other words, there's some portion of that time that is estimated or deemed to be travel time that relates to the going from A to B, but there's a whole lot of time in between that you're saying the Portal to Portal Act does not necessarily apply in full. How do you measure? So the Portal to Portal Act only controls the activities that occur prior. I'm just saying, in this case, under that hypothetical, how would the guideline or the guide measure what is compensable and what is not? The time necessary to travel from the first worksite to the last worksite would be compensable. Any off-duty time in the intervening period is off-duty time and is not compensable. You started to define the workday, I guess the continuous workday, and I think you started to say it's from the time of the first principal activity. All time between the first principal activity and the last principal activity in a workday is deemed ordinarily compensable unless it falls under off-duty time or a bona fide meal period. So in Judge Hardeman's example, 7 to 11, and then what was it? 8 to midnight. How does that map onto what you just defined as the workday? The first shift at the first client's home would be the first principal activity, and then when he or she finishes the last shift at the last client's home, that's his last principal activity and the workday has ended. Therefore, when he drives home, that's ordinary commute time, and that's what the Portal to Portal Act discusses. What about the time between 11 a.m. and 8 p.m.? Is that part of the workday? It is part of the workday, but you have to determine what is compensable or not. There's a distinction between defining the workday and then what's compensable or not compensable during that workday. If there was a normal between A and B would be, let's say, 15 minutes, that's the only thing that's compensable between 11 in the morning and 8 at night? Is that correct? Yes. What about the example about someone who asked for an accommodation from the boss and says, you know, I want to go to a tournament with my child, and I want Friday off, so I want to work a 30-hour week this week, and then I'll work 50 next week to make it up, and the boss says, okay, I'll accommodate you with that. In the second 50-hour workweek, does the boss need to pay overtime for the 10 hours over the 40-hour workweek? If the employee is covered by the FLSA, then yes, all hours over 40 in a workweek must be compensated at time and a half their regular rate. So under that example, you're penalizing the employer for accommodating the request of the employee. That's the way the federal law is written. I wouldn't say that it's a penalty. I think when Congress enacted the FLSA in 1938, it was concerned about extraordinarily long workweeks and intended to spread the work to ensure that people had jobs by encouraging employers not to overwork one employee and instead perhaps employ two employees. So I take your point, but I don't think that Congress intended to punish employees or employers by doing that. No, I'm not saying they intended to. I'm suggesting that it seems like an unintended consequence here. On that example, you've got an employee who's seeking an accommodation because if you don't get the accommodation, the boss says, oh, you're going to work Friday and you're going to miss your kid's weekend trip. Yes, but in your example of the 50-hour workweek, the employer has gained the benefit of 50 hours, so why should they not have to compensate for the extra 10 hours at time and a half the regular rate? Well, it wasn't the employer's idea. It was the employee's idea. But he or she accepted that. And I do take your point, but the sufferer permit is the standard, and an employer can't get out of the FLSA's requirements by saying, oh, well, the employee asked for it. The employee cannot waive their rights under the Fair Labor Standards Act for very good reason. Right. I'm happy to keep talking about the travel time issue, but I would also like to. Well, let's focus on willfulness and damages because that's a big issue here. Well, and before we get to that, maybe why is the company wrong that Bridges supports their argument here? Bridges, as you all mentioned in the earlier argument, concerns the OPM regulations, which are found at 5 CFR. They contain different definitions of principal activity, a workweek, and the court even explains that. Yeah, but parse for us the language because Mr. Doherty conceded that it's a different regulation, but his argument was that the Bridges case suggested that to the extent other regulations say essentially the same thing, then the same principle should apply. So tell us what's different about the regulations here that should lead us to conclude that the same principle does not apply. The OPM's regulations explain that an employee's principal activity is the time during their regularly scheduled administrative workweek, and because the prison guards in that case were accepting the shift sort of irregularly, it was not part of their regularly scheduled workweek at the jail. That was not part of their principal activities. That definition just does not exist under the department's regulations. The court also explained in Bridges that their regulations, the OPM's regulations, call for a non-continuous workday, which could, I think, mean there's one continuous workday and it ends, and then another continuous workday can happen. So two in a day, which completely conflicts with the department's regulations, and courts' opinions interpreting the department's regulations. So in a way, it's really apples and oranges. It's hard to fit Bridges into the scenario here because they're just completely different definitions of controlling terms. Back to the King of Prussia. So the HHA goes out to the King of Prussia to visit the next client, and on the way says, I'm going to stop at the King of Prussia mall because I have to return a thing, and while I was returning the thing, it caught my attention. I ended up buying a pair of shoes, half an hour in the mall, and then leaves the mall and goes the extra mile to the client. That half an hour in the mall is not compensable. No, that would be off-duty time, yes. And I think it's important to note that these gaps of time between the clients, it's sort of, I think, prestigious trying to phrase it as if there's three, four, five hours of time in between all of these client appointments, and while it's irrelevant because the time of a gap doesn't matter, that's also incorrect. Their own data shows that the majority of gaps between clients, about 64%, was an hour or less, when employees could have very well been directly traveling between those work sites, but we don't know that for sure because they didn't keep records. So we can't verify that information, and that's why the wage and hour inspector investigator had to manually type in over 3,000 addresses, work site A to work site B, to determine this average of 15 minutes travel time. Why did you switch investigators? So there wasn't a switch of investigators. The first investigator was always on the case, but I think it's important to note that when Prestige says that the department at the end of discovery came up with this new damage calculations, they omit the fact that they, at the very last minute, turned over thousands and thousands of records that the court ordered them, compelled them to turn over because they didn't in the first instance. The second investigator used those new records to refine the department's estimate based on this new information that it had, that Prestige always had in its possession, but just did not turn over timely. You used the word estimation, and I think that's the right word. It's a little troubling that, I mean, this is, there are a lot of plug numbers here. These aren't hard facts. Is your response that, well, yes, but there's nothing we can do about it because they didn't keep the records? Is that the answer? Mount Clemens is the controlling case to that issue. I see you, Matt. Go ahead. Mount Clemens explains that when an employer fails to keep adequate records, the employer, or sorry, the employee, in this case the secretary on behalf of the employees, need only show as a matter of just and reasonable inference the amount of work that the employees worked. So if you were to say, why doesn't the secretary precisely show how much Prestige should be paying in back wages, that's not the standard under Mount Clemens. You would be asking the secretary to essentially recreate Prestige's records for them when that is their duty to create and maintain accurate records. The liquidated damages turns on good faith, which in turn turns on willfulness, and your willfulness argument is that they were aware because of the 2017 conciliation. So liquidated damages and willfulness are two separate issues, and they are not dependent on the other. Although some courts, when there's a finding of willfulness, that necessarily forecloses a finding of good faith for the liquidated damages aspect, but they are separate inquiries with separate standards. So for liquidated damages, as you said, it's whether the employer had good faith or a reasonable basis to believe that their actions were permitted, and that is the employer's burden to show. And Prestige has presented zero facts that it attempted to comply with FLSA, that it took any affirmative steps to comply with FLSA, or that it acted reasonably. And the courts have said that this is a steep and heavy burden, and that liquidated damages are presumed. They are automatic because they are compensatory. They are not punitive because they compensate the employee for the lost time. And that's all independent from the willfulness. Yes, and willfulness is whether the employer knew or had reckless disregard for whether its conduct was in violation of the Fair Labor Standards Act. Can we take cognizance of the prior violation? Sorry, can you repeat that? Can we take cognizance of the prior violation? Yes. Why, since the prior violation was for something altogether different? Well, the Ninth Circuit in the A1 medical staffing case that I cited said that it doesn't have to be the same violation. 404B, like just, I mean, I don't understand that. Well, sorry, you mean 404B of the rules? Because you've done something wrong once before, that means we presume you did something wrong here? Well, it goes to a finding that you actually knew where you recklessly disregarded the fact that you were violating the Fair Labor Standards Act. And it doesn't matter that if in one case it might have been you weren't compensating time and a half over 40 hours in a work week. That should have put you on notice, and the Ninth Circuit has said this. To review your compliance with the Fair Labor Standards Act, you can't just put your hands over your eyes and say, well, this must be the only thing I'm violating. I'm just saying it doesn't seem to follow that because you violated the act in an X manner, years ago, you automatically are on notice that you're violating the law in Y manner now. It may not be automatic that you're on notice of actual knowledge, but it demonstrates a reckless disregard, that you're disregarding that your practices are compliant with EPLSA. That should have been reason enough for you to inquire about your practices, and again, this is what the Ninth Circuit has said, that you should have taken time to ensure that your practices are compliant. Has the Third Circuit said anything about this? No, not to my knowledge. If the employer had a good faith belief that the travel time was not compensable, could it have mitigated its downside risk by seeking a declaratory judgment or an opinion letter from the DOL, or could it have done something so it didn't end up in this position of having millions of dollars in assessments? So, as far as obtaining an opinion letter, you can't do that in active litigation, so that was not... I mean, before the case was filed. Sure. They could have consulted with attorneys, for example, or shown any sort of affirmative acts that it inquired about its practices, understood its obligations under the Fair Labor Standards Act, but there are just no facts in the record to support that. If the employer had an opinion letter from an attorney that said, look, I've looked into this, and under the Bridges case, you don't have to pay for the travel time, that might have mitigated the damages here? Courts have found that if an employer consults with an attorney on a certain issue and takes that attorney's advice and actual implements it, that that could support a finding of at least reduced or some level of reduced liquidated damages. And, again, that's not the case. Non-willfulness too? It could fall into willfulness, but, again, willfulness is actual knowledge or a reckless disregard, which is really different from acting in good faith. And if you all have questions about the backwage estimate, I can speak to that, but I know we're out of time. Yeah, if you could summarize that, that would be helpful. Right, so the... And also, briefly, you're estimating and they're trying to estimate and they're experts not allowed to speak. That seemed like an unfair fight, so why was Crandall's report properly excluded? Crandall's report was properly excluded because the court found that it was unreliable and prejudicial. There wasn't a text of his decision, but it wasn't a footnote, a quite long footnote. So we do understand why the court struck his report. And, to be specific, Crandall, in making his damage estimates, which he called them estimates, he's not saying they're precise damages, he used $7.25 as the backwage amount for assessing uncompensated time, but that's legally incorrect. You must compensate at an employee's regular rate, which is an employee's compensation for a work week divided by hours worked. Was that the minimum wage he used? $7.25, yes. That's the state minimum wage? Yeah, it's both the state and the federal minimum wage. But that was legally incorrect and that made his calculations incorrect, which would have been confusing to a jury if they thought that they could find to assess damages at $7.25. He also... Yes, $11 for all backwages. And why was that? He ran 7,000 work weeks of employees to determine the average regular rate, which, again, is all compensation in a work week divided by hours worked during that work week, and came up with $11 as the average regular rate for a sample of these employees. And, again, sampling is permissible under Mount Clemens. So he did assess $11 for that. And also Mr. Crandall said that because the department's average travel time before adding these curb-to-curb time calculations was less than 10 minutes, it was 9 minutes, that we could just get rid of all that time as de minimis, which is not the rule. De minimis time is an affirmative defense, and it is only for irregular periods of time when an employee is not regularly working or an employer cannot calculate that time, you know, minutes, seconds. It's, again, legally incorrect to assume that. It made all of his calculations unreliable and, again, prejudicial if a jury thought that they could find a de minimis affirmative defense. And, again, the department's burden is reduced under a Mount Clemens framework. The employer's burden is to show precise damages through correct records. That is not what we have here. So the department correctly gave, as a matter of just and reasonable inferences, using representative samples that were reasonable, the damages owed. Then it is now prestigious burden to provide either precise damages, which they have not, or sufficiently negate the reasonableness of the department's calculations, which, again, they have not. As the courts have explained, the fact that an employer has not kept accurate records should not be an insurmountable burden for employees to climb in order to show that their work was not accurately compensated for. The upshot is that if you don't have accurate records as the employer, you're putting a tremendous disadvantage on the damages, because the DOL gets to do its best estimation. Well, the DOL's estimate must still be as a matter of just and reasonable inference, and they have the opportunity to … Try to rebut what you came up with. Right. They can rebut the reasonableness of our damages. It's not just sort of A then B. They have their opportunity. They just have not met it in this case. All right. Thank you. Thank you. Let's hear Mr. Daugherty's rebuttal. Would you start where Ms. Trautman ended with what was the rebuttal that you offered to their proffering of their estimates, and why was the district court wrong in not accepting your rebuttal? Well, we weren't allowed to rebut it, Your Honor. Mr. Crandall was thrown out, and we were never allowed to put the investigator on the stand for the finer of facts. Well, these were cross motions for summary judgment, right? But we had a cross motion to find specifically just the travel time. It was not compensable. It was not compensable. We didn't move on. Did you ever file a motion for reconsideration or an effort to say to the court, look, now that we lost on the travel time, we want a trial or a full-blown evidentiary hearing on the damages? We filed a motion in consideration to the ruling in total, and it was denied. But did that specify that you wanted a hearing on damages? It specified we were questioning both the summary judgment entry as well as the damages entry, as well as the denial of sanctions, as well as the denial of Mr. Crandall. It was effectively our appeal, Your Honor. So we brought it up. I mean, I think the court is pointing out. Are you now keeping records? I don't know the answer to that. Exactly. He's saying yes, you are. Okay. Yeah. So, but I think the court's questions are part of the problem on how would you keep accurate records. Is it the one minute Your Honor brought up? Is it the 15 minutes? What happens if the aide chooses to walk versus drive? There's been no evidence to the record, and there's been the job descriptions were turned over. There's no requirement for an aide to have a driver's license. So if the aide chooses to take a bus versus drive or chooses to walk, what would the employer be required to pay out of that two-hour, three-hour, four-hour block? If they choose to walk because it's a beautiful spring day? The answer we got from Ms. Trautman is the normal travel time between client A and client B, regardless of what happens in between. According to the guide. That's what the regs suggest. Well, that's what the department is saying. But, again, I am surprised to hear the department now saying that you wouldn't have to pay an employee for the direct trial. If that walk was one hour and they went direct-to-direct, you wouldn't have to pay for that direct time, that you would pay some sort of reduced time because the employee's chosen conduct. She came up here and stated to you that their conduct, the employer can't, or the employees can't waive their rights through their own choice, and Your Honor, I suppose we asked her about that. I mean, Your Honor brought up. I can't imagine that you wouldn't be on strong footing if you had a home health aide that could take a 15-minute bus ride from client A to client B and insisted on walking an hour and then demanded that you pay for the hour walk because the client didn't want to take a bus. I can't imagine that you'd be in the situation you're in now if that was happening. We couldn't imagine. The situation you find yourself in now is because you had a legal argument that it turned out to not be accepted by the district court. And the legal argument, as I understand it, is that going from client A to client B is not part of the travel all-in-a-day's work regulation. It's not covered by that. Instead, it's like the Bridges case. And we should follow Bridges and say that that triumph is not compensable. Is that your argument? That's exactly right, Your Honor. I don't know. All right. Thank you very much. I think we just established we understand your argument. And we, I think, understand the government's argument. We thank you, Mr. Dougherty. Thank you, Ms. Troutman. The court will take the matter under advisement. Thank you, Your Honor. The stand is adjourned.